IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


MARGIE F. CARNLEY,
    Plaintiff,

v.                                                 Case No:   5:09cv6/RH/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.

_____

**REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Carnley's applications for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff, Margie Carnley, filed applications for benefits claiming an onset of disability as of February 11, 2005. The applications were denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). A hearing was held on October 23, 2007 at which Ms. Carnley was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 19-27) and Ms. Carnley requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 6-8). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel,* 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Carnley had not engaged in substantial gainful activity since February 11, 2005; that she had severe impairments of (1) mild degenerative disc disease, status post laminectomy at L4-5, (2) headaches, and (3) a history of narcotic addiction; that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; that she had the residual functional capacity for the full range of work at the light level of exertion; that she was capable of performing her past relevant work as a general clerk; and that she was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that

the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore*, 405 F.3d at 1211; 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Ms. Carnley first complained of migraine headaches in March 1998 for which she was prescribed Lortab (tr. 177). Later that fall she continued to complain of migraines but told the physician she felt Lortab was addictive and wanted Imitrex instead. The medical record over the next two years deals primarily with complaints of low back pain and on August 3, 2000 Ms. Carnley underwent a lumbar discectomy at L4-5 (tr. 250-251). Her recovery was unremarkable.

Two years after her surgery she was in an automobile that got caught in what she describes as a tornado. Part of a tree came through the window and struck her in the head. An x-ray taken on September 25, 2000 disclosed early degenerative disc disease at the L5-S1 level (tr. 193) and an MRI taken a month later showed a minimal bulge at C3-4-5 and at L5-S1.

On January 3, 2003 Ms. Carnley saw Dr. Stringer, the neurosurgeon who had performed her back surgery three years earlier. Her recovery was progressing well but she complained of headaches for which she was referred to a Dr. Lutfi (tr. 240). Three months later she returned to Dr. Stringer indicating that she had not seen Dr. Lutfi because her headaches had resolved (tr. 240).

Over the next two years her health status did not change significantly but she continued to complain of headaches. On February 23, 2005 she saw Dr. Fulmer, her family physician, complaining of drainage, a dry cough, and headache (tr. 262). Three weeks later, on March 21, 2005, she returned to Dr. Fulmer at the Campbellton-Graceville Hospital saying she had started a new job and had suffered from a headache for the previous week. She was given an injection of Demerol and Phenegran (tr. 277).

In December 2005, Ms. Carnley began a lengthy period of frequent visits to emergency rooms in her area. According to the record, she resided in Graceville, Florida. There are three emergency rooms nearby, specifically the Campbellton-Graceville Hospital in Graceville, the Flowers Hospital in Dothan, Alabama, and the

Southeast Alabama Medical Center in Dothan, Alabama. Her presentation on all of her emergency room visits were for migraine headaches. Thus, in December 2005 she went to the Campbellton-Graceville Hospital twice and was injected with Nubain (tr. 243-247). In January 2006, she went to the Campbellton General Hospital once (tr. 537) and went to the Southeast Alabama Medical Center four times (tr. 463, 473, 485). On her January 8, 2006 visit the emergency room physician at Southeast Alabama told her that she could not be given any more narcotics for pain (tr. 486-489). That was the second time she had gone to the hospital that day (tr. 485).

Ms. Carnley went to the Southeast Alabama Emergency Room twice in February 2006 (tr. 450-451) and three more times in March (tr. 420, 431, 440). In May 2006 she went to the Southeast Alabama Emergency Room once (tr. 372) and the Campbellton General Hospital Emergency Room twice (tr. 530-534). On her last visit to Campbellton General a note was made that her repeat visits were consistent with addiction to narcotics (tr. 530). She returned to Campbellton General in late June 2006 (tr. 526).

Ms. Carnley returned to the Flowers Hospital Emergency Room on September 23, 2006 (tr. 337) and three times in November 2006 (tr. 585, 590, 604). On February 27, 2007 she went to the Campbellton General Emergency Room (tr. 522) and the next day went to the Flowers Hospital Emergency Room (tr. 578). In May 2007 she went to the emergency room at Campbellton General twice (tr. 514, 519) and Flowers Hospital once (tr. 517). She went to the Campbellton General Hospital twice in June, on June 21 and June 22, 2007, and on that later visit the physician noted "chronic migraine, narcotics addiction - frequent visits to ER - seen twice last night." (tr. 506) Ms. Carnley was seen at the Flowers Hospital once in July 2007 (tr. 561) and at the Campbellton General Emergency Room twice in August 2007 (tr. 501). Her last two emergency room visits prior to the hearing before the ALJ were on September 9 and September 10, 2007, both at Flowers Hospital (tr. 549, 555).

During the approximate three year period between her alleged onset date in

February 2005 and her hearing in October 2007, Ms. Carnley went to the emergency room over thirty times as outlined above. She was given Topomax, an anti-seizure medication, Nubain, a synthetic opioid, Demerol, a morphine-derivative opioid, Dilaudid, a morphine-derivative opioid, Morphine, a natural opiate, Stadol, a natural opiate, and Ativan, an anti-anxiety medication.

On November 4, 2005, Ms. Carnley was examined by Sam Banner at the request of the State Agency. She gave a history of her treatment by Dr. Stringer resulting in her back surgery in 2000 and the subsequent automobile incident which she said contributed to her ongoing low back pain. She told Dr. Banner her medical condition had affected her daily routine life to the point of being unable to drive, walk for even short distances, and clothe herself. Epidural steroid injections had relieved her pain for only a short time. She also gave a past history of migraine headaches. She cried throughout her physical examination and needed assistance clothing herself and putting on her shoes. On examination of her neck, range of motion was essentially normal and no spasm was noted. Range of motion in the extremities was normal, there was no spasm in her back but she stated she could not do range of motion examination because of her pain. She walked slightly bent at the waist with slow steps and could not squat or heel/toe walk. Neurological and sensory examinations were normal as were reflexes and grip. There was positive leg raising bilaterally but no atrophy of any muscle group and muscle tone was normal. Fine and gross motion in both hands was satisfactory and she was able to button and unbutton clothing without difficulty. Dr. Banner's diagnosis was chronic low back pain and a history of migraine headaches and he indicated that Ms. Carnley would need continued medical care. He did not place any restrictions on her activities (tr. 285-288).

Finally, there is a medical verification form in the record in which Dr. Fulmer stated that Ms. Carnley was "unable to work due to excruciating pain in neck, back, & hips" and that the expected duration would be "permanent." (Tr. 548). Dr. Fulmer

noted that he had last seen Ms. Carnley on May 21, 2007 but the form itself is undated.

## DISCUSSION

Ms. Carnley argues that the ALJ erred in failing to consider her lumbar spine impairment and rejecting Dr. Fulmer's opinion, in finding that her headache complaints showed narcotic seeking behavior, and in finding her not credible, and that she was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Carnley was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Failure to consider Ms. Carnley's lumbar spine impairments.</u>

Ms. Carnley first argues that although the ALJ noted that she had a severe impairment of mild degenerative disc disease post laminectomy, he did not consider the impairment because it had worsened since the surgery in 2000. She points to MRI results in 2004 that showed mild to moderate bulging and foraminal narrowing at L3-4 (tr. 253-54). She further argues that the ALJ erred in not finding her lumbar spine impairment to be severe, but she is incorrect in this assertion. As noted above, the ALJ found her degenerative disc disease post laminectomy to be severe (tr. 21). Whatever name Ms. Carnley wants to attach to the impairment, there was substantial record evidence to support the ALJ's finding that Ms. Carnley could do light work. The Commissioner's regulations define "light work" in part:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg

>controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). There was nothing in the record, other than Ms. Carnley's subjective complaints, to support a finding that she was incapable of performing this type of work. Indeed, an x-ray taken September 9, 2007 noted only mild chronic lower lumbar degenerative disc disease (tr. 559).

Ms. Carnley also contends that the ALJ erred in rejecting Dr. Fulmer's opinion that she could not work. However, a treating physician's opinion that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims. The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner. For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion. *See also* Title 20 C.F.R. § 416.927(e). Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner. Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance"). Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p. In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a

treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters. These things are not properly considered by the Commissioner in determining disability. Title 20 C.F.R. §§ 404.1566, 416.966. For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance. There was substantial record evidence to support the ALJ's decision to reject Dr. Fulmer's opinion with respect to the allegedly disabling effect of the pain plaintiff reported. Ms. Carnley is not entitled to reversal on this ground.

    2.    <u>Rejecting headache claims.</u>

Ms. Carnley next contends that the ALJ erred in rejecting her claims of migraine headaches, finding instead that her frequent visits to the emergency room were a manifestation of drug-seeking behavior. There was evidence that Ms. Carnley suffered from migraine headaches, largely based on her subjective complaints, and at least Dr. Fulmer accepted this as true. There was also evidence that Ms. Carnley was seeking narcotic drugs. The ALJ's task was to determine which evidence to

believe. There is no question that for the two years before her hearing Ms. Carnley was a more than frequent visitor to the emergency room, and there is no question that the relief provided by those visits was almost always a narcotic or synthetic replacement. It is noteworthy that physicians at two of the emergency rooms she visited commented on her apparent drug dependence, even going to far as to tell her not to come back soon. Whether this was the most compelling evidence, or whether Ms. Carnley's claims to be a genuine migraine sufferer preponderated, is not the issue. The issue this court must determine is whether there was substantial record evidence to support the ALJ's rejection of the headache claim as a mask for drug addiction and drug seeking behavior. Clearly there was such evidence. Therefore, Ms. Carnley is not entitled to reversal on this ground.

3. <u>Finding Ms. Carnley not credible.</u>

Finally, Ms. Carnley says that the ALJ should have found her credible and that he erred in rejecting her subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

---

[1] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

*Case No: 5:09cv6/RH/MD*

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*,

395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Unfortunately for Ms. Carnley, her credibility was in large part intertwined with the drug addiction and the drug-seeking behavior that the ALJ found to exist, and although she had surgery for her low back in 2000, there was little objective evidence to support her subjective complaints. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination. There was substantial record evidence to support the ALJ's determination on this issue, and Ms. Carnley is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 18th day of February, 2010.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u>  **A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**